

**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

November 11, 2021

Taylor B. Graham, Esq.
Graham@PeltonGraham.com

**VIA CM/ECF**

Hon. Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Salgado Ramirez, et al v. Douros Management Corp., et al.*
             <u>Civil Action No. 21-cv-02694 (BMC)</u>

Dear Judge Cogan:

    This office represents plaintiffs Yuvany Salgado Ramirez and Rafael Bacuilima Narvaez (the "Plaintiffs"). We write, jointly with counsel for Douros Management Corporation, Douros Taxi Inc., and John Giovanis (collectively, "Defendants"), pursuant to Your Honor's October 21, 2021 Order and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the Settlement Agreement (attached as **Exhibit A** to the Affidavit of Taylor B. Graham, Esq.)[1] constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.    Procedural History and Plaintiffs' Allegations**

    Plaintiffs initiated this action by sending Defendants a letter demand for payment of back wages, a draft complaint and damages analysis on March 24, 2021 (the "Demand Letter"). Any attempt at settlement discussions failed, and thus the Plaintiffs proceeded with filing this Collective Action Complaint in this Court on May 13, 2021 (Dkt. No. 1 (the "Complaint")). On July 7, 2021, Defendants filed their Answer, denying all material allegations and asserting affirmative defenses. (*See* Dkt. No. 14).

    Pursuant to Your Honor's May 14, 2021 Scheduling Order, the parties filed their joint letter and proposed case management plan with the Court on June 24, 2021. At the Initial Status Conference on June 29, 2021, Your Honor set forth deadlines for the exchange of Rule 26(a)(1) disclosures, written discovery and depositions, including an October 17, 2021 end of fact discovery deadline. (Minute Entry Dated June 29, 2021). The parties exchanged Rule 26(a)(1) initial

---

[1] The attached Settlement Agreement has only been signed by Plaintiffs but Defendants' signature is expected early next week. The parties will file a fully-executed version of the Settlement with the Court when we have it.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

127882725.1

disclosures on July 20, 2021 and written discovery requests on July 27, 2021. In response to the document requests, Plaintiffs exchanged certain photographs taken during Plaintiff Salgado Ramirez's shifts and Defendants exchanged certain text messages purportedly between Defendant Giovanis and Plaintiff Salgado Ramirez from 2018 and 2019. The parties scheduled depositions to take place during the week of October 15, 2021.

Since the Initial Conference, the parties engaged in numerous discussions pertaining to Plaintiffs' claims and Defendants' defenses, and had ongoing settlement negotiations. Ultimately, the day before depositions were scheduled to take place, the parties reached a settlement in principle and informed the Court of the same on October 20, 2021. (Dkt. No. 15). Over the next several weeks, the parties memorialized the terms of their agreement into the Settlement Agreement for which they now seek the Court's approval.

## II.     The Settlement Accounts for Litigation Risk

As set forth in the Complaint, Plaintiffs are former autobody mechanics for Defendants' autobody taxi shop. Plaintiffs allege that throughout the relevant time period Defendants paid them a fixed weekly salary that fell below the statutory minimum wage and did not include overtime premiums for hours worked over 40 in a week. Plaintiffs further allege that they were at all times paid their wages with no wage statements, and that Defendants failed to track their actual hours worked.

Throughout the litigation, the Parties have disputed several issues of fact and law regarding Plaintiffs' employment, particularly with respect to Plaintiffs' alleged hours worked and the meal breaks they were permitted to take throughout their respective employment periods. Although Defendants recognized in their discovery responses that Plaintiffs worked six (6) days per week from Monday through Saturday, and that Plaintiffs each received fixed weekly salary amounts, Defendants allege that Plaintiffs took lengthy lunch breaks during which they were relieved of all duties that reduced the hours for which Plaintiffs were entitled to compensation and which substantially reduces their potential unpaid wage damages. Plaintiffs, on the other hand, allege that while they were told they would be entitled to a one (1)-hour meal break, they were often unable to take at least a thirty (30) minute uninterrupted meal break, allegedly because routine vehicle inspections had to be completed and Defendant Giovanis allegedly required them to service any incoming customers' vehicles upon their arrival regardless of whether Plaintiffs were on break. Furthermore, adding to the parties' dispute regarding the actual number of hours worked and breaks taken, if any, is the fact that Plaintiffs did not maintain any records and Defendants did not provide in discovery any timekeeping or payroll documents to support their defenses.

Defendants also maintain that Douros Taxi Inc. is not a proper defendant because that entity did not employ any mechanics but simply owned certain taxi medallions.  Finally, Defendants assert that Douros Management Corp. has been severely impacted financially due to the decrease in fleet taxicab demands as well as the Covid-19 pandemic, such that Defendants likely would not be able to continue the litigation through trial and ultimately would not be able to pay a judgment for the full amount of the damages that Plaintiffs have calculated as their "best-case-scenario"

damages. Plaintiffs recognize that although a factfinder could credit their testimony over Defendants, the absence of timekeeping and payroll documents for the entirety of the NYLL statutory period could potentially limit the amount in damages Plaintiffs could recover at trial regarding their minimum wage, overtime and spread-of-hours claims. Plaintiffs are also aware of the risk of Defendants not being able to satisfy any judgment that they may receive after trial. Taking into account these risks, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement. Further, since the parties have exchanged all written discovery responses, the parties were able to make an informed decision regarding the strengths and weaknesses of their claims and defenses and the benefits of an early settlement to avoid further litigation expense.

As noted above, Plaintiffs created an individual damages analysis based on Plaintiffs' best estimates of the hours worked and the wages paid during the relevant time period. In total, Plaintiffs' damages analysis calculated $289,438.04 in combined unpaid wage damages, which amount includes: 1) for Plaintiff Yuvany Salgado - $2,861.43 in unpaid minimum wages, $35,010.55 in unpaid overtime premiums, $645.50 in unpaid spread of hours premiums, $38,517.48 in liquidated damages, $5,000.00 in statutory wage statement damages, and $13,398.54 in statutory interest; and 2) for Plaintiff Rafael Bacuilima Narvaez - $29,915.52 in unpaid minimum wages, $41,299.37 in unpaid overtime premiums, $8,544.70 in unpaid spread of hours premiums, $79,759.58 in liquidated damages, $5,000.00 in statutory wage statement damages, and $29,485.37 in statutory interest.[2] (*See* Graham Aff., **Exhibit B**). Although there is a possibility that Plaintiffs could recover higher damages if they won on all of their claims at trial and survived any appeal, there is also the possibility that they could receive much lower damages, or nothing at all. The parties therefore believe that the settlement amount (i.e., $79,000.00) is mutually beneficial given the risks associated with establishing Defendants' liability and allows the parties to sever their relationship in an expeditious manner given that Plaintiffs are no longer employed by Defendants.

### III.     Settlement Terms

As set forth in the Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $79,000.00 (the "Settlement Amount"), inclusive of attorneys' fees and costs. Of the Settlement Amount, $26,818.27 is payable to Plaintiffs' counsel (consisting of $727.41 in expense reimbursements and $26,090.86 in attorneys' fees). The remaining $59,181.73 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement and related to the claims and defenses presented in this Action. The parties also did not include a

---

[2] As stated in the annexed Graham Affidavit at ¶6, Plaintiffs' counsel calculated damages by dividing Plaintiffs' respective fixed salary rates by an average of their alleged total hours worked per week to yield Plaintiffs' effective hourly rates and calculated minimum wage and overtime premiums owed based on this information.

confidentiality or non-disparagement provisions in the Agreement restricting the parties from making any statements related to this Action or the Settlement terms.

IV.     **Plaintiffs' Attorney's Fees and Expenses**

As set forth in the Affidavit of Taylor B. Graham, Esq., to date, Plaintiffs' counsel has spent more than 72 hours in prosecuting and settling this matter, resulting in a lodestar of $19,255.69. *See* Graham Aff. Ex. C. Plaintiffs' counsel has spent $727.41 in actual litigation costs, which include the cost of filing the complaint as well as expenses for process of service. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $26,090.86) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 1.35 times lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved by this Court in connection with a recent wage and hour default judgment. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Similar hourly rates have also been approved by other judges in the EDNY. *See also Pucciarelli v. Lakeview Cars, Inc.*, No. 16-cv-4751 (RRM), 2017 U.S. Dist. LEXIS 98641, at *4-5 (E.D.N.Y. June 23, 2017) (approving similar rates from 2017); *Hall v. ProSource Techs., LLC*, No. 14-cv-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, at *37 (E.D.N.Y. Apr. 11, 2016) (approving similar rates from 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

V.      **The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of

settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of numerous discussions with respect to Plaintiffs' damages computation and vigorous arm's-length negotiations that took over the course of several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation, as well as the strengths and weaknesses of the claims and defenses presented. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including the parties' disagreement with respect to Defendants' payment practices and Plaintiffs' allegations with respect to their respective hours worked throughout their employment periods. If the parties were to engage in further litigation, they would need to take depositions and prepare motions for summary judgment and then prepare for trial, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most fair, efficient and effective conclusion to this litigation.

\* \* \* \* \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| By: */s/ Taylor B. Graham* | By: */s/ Bryn Goodman* |
| Brent E. Pelton, Esq. | Bryn Goodman, Esq. |
| Taylor B. Graham, Esq. | Brett A. Berman, Esq. |
| **PELTON GRAHAM LLC** | **Fox Rothschild LLP** |
| 111 Broadway, Suite 1503 | 101 Park Avenue |
| New York, New York 10006 | New York, New York 10178 |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

Enclosures

cc: All counsel (via ECF)